UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

KEITH TODD,

                        Petitioner,

      -against-

SUPERINTENDENT SANDRA DOLCE,

                        Respondent.
-------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-5421 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Petitioner Keith Todd ("Petitioner") brings this pro se Petition for a Writ of Habeas

Corpus, pursuant to 28 U.S.C. § 2254. (Pet. (Dkt. 1).) Petitioner challenges his resentencing in

state court, and further attacks a state court decision denying him poor person status for purposes

of an appeal of the denial of a state habeas petition. For the reasons set forth below, Todd's

Petition is DENIED.

## I.    BACKGROUND

### A.    Criminal Trial

      On November 6, 2000, Petitioner was convicted in Supreme Court, Queens County of

sodomy in the first degree, N.Y. Penal Law § 130.50(3), course of sexual conduct against a child

in the first degree, id. § 130.75, and endangering the welfare of a child, id. § 260.10(1). (Aff. of

Sharon Y. Brodt in Opp'n to Pet. for Writ of Habeas Corpus ("Brodt Aff.") (Dkt. 13) ¶ 6.)

      Petitioner was subsequently sentenced as a second violent felony offender to two

concurrent twenty-year terms of imprisonment for the first-degree sodomy and first-degree

course of sexual conduct against a child charges, and a one-year term of imprisonment for the

endangering the welfare of a child charge, also to run concurrently. (Id. ¶ 7.)

**B.  Direct Appeal and Original Collateral Attacks on Conviction**

On June 13, 2002, Petitioner filed a brief in the Appellate Division, through counsel, claiming that (1) he was denied his due process rights to a fair trial and to present a defense when the state court refused to exclude the victim child's grandmother from the courtroom, and (2) his twenty-year sentence was excessive. (See June 13, 2012, Aff. of Rebecca Height ("Height Aff.") (Dkt. 14) at 3.)[1]

On August 12, 2002, the State responded, arguing that (1) the court did not abuse its discretion in permitting the grandmother to stay in the courtroom, and (2) Petitioner's sentence was not excessive because it was less than the statutory maximum. (Id.)

On or about December 13, 2002, Petitioner filed a pro se supplemental brief in the direct appeal, alleging that: (1) he received the ineffective assistance of counsel because trial counsel failed to submit written notice of Petitioner's intent to testify before the grand jury; (2) the court should have dismissed the indictment because Petitioner wanted to testify before the grand jury; (3) the indictment was defective because it did not contain the signatures of the grand jury foreperson and the district attorney; (4) the court improperly interfered with the direct examination of a prosecution witness; and (5) the court erred in sentencing Petitioner as a second felony offender without a hearing. (Id. at 3-4.)

On February 13, 2003, the State responded, arguing that: (1) Petitioner received the effective assistance of counsel; (2) Petitioner's failure to serve written notice of a desire to exercise his right to testify before the grand jury rendered his claim meritless; (3) the filed indictment contained the signatures of the grand jury foreperson and the district attorney; (4) the trial court's questioning of the prosecution witness was appropriate; and (5) Petitioner's

---

[1] All state court record materials cited in this Memorandum and Order were filed by Respondent at Dkt. 14.

challenge to his second felony offender status was waived, unpreserved, and meritless because he never moved to controvert the predicate felony statement. (Id. at 4.)

On June 23, 2003, the Appellate Division affirmed the judgment of the trial court. See People v. Todd, 761 N.Y.S.2d 312 (App. Div. 2003). On December 12, 2003, the New York Court of Appeals denied Petitioner's application for leave to appeal. See People v. Todd, 807 N.E.2d 910 (N.Y. 2003).

On or about July 24, 2007, Petitioner filed a motion pursuant to section 440.10 of the New York Criminal Procedure Law, arguing that his indictment was jurisdictionally defective. (Height Aff. at 4.) On September 18, 2007, the State responded. (Id.) On October 1, 2007, the state court denied Petitioner's motion as procedurally barred and meritless. (Id. at 5.)

On November 2, 2007, Petitioner applied to the Appellate Division for leave to appeal the state court's October 1, 2007, decision. (Id.) The State responded, and on January 10, 2008, the Appellate Division denied Petitioner's application. (Id.)

On or about February 8, 2008, Petitioner filed a motion pursuant to section 440.20 of the New York Criminal Procedure Law, claiming that his sentence was illegal. (Id.) On March 7, 2008, the State responded and on March 16, 2008, the state court denied Petitioner's motion. (Id.) On or about April 14, 2008, Petitioner sought leave to appeal the state court's decision. (Id.) On May 20, 2008, the State responded, and on July 2, 2008, the Appellate Division denied Petitioner's application. (Id.)

On or about July 13, 2011, Petitioner filed a motion for a writ of error coram nobis, on the grounds that he was denied the right to effective assistance of appellate counsel. (Id.) On or about October 7, 2011, the State filed a response. (Id.) On December 13, 2011, the Appellate Division denied Petitioner's motion. See People v. Todd, 934 N.Y.S.2d 346 (App. Div. 2011).

Petitioner sought leave to appeal that order to the New York Court of Appeals. (Brodt Aff. ¶ 26.) In a letter dated February 15, 2012, the State opposed. (Id.) On March 9, 2012, the Court of Appeals denied leave to appeal. See People v. Todd, 967 N.E.2d 716 (N.Y. 2012).

On May 12, 2008, Petitioner filed a petition for a writ of habeas corpus in this court. See Todd v. Graham, No. 08-CV-2050 (NGG), 2008 WL 2965248, at *1 (E.D.N.Y. Aug. 1, 2008). On August 1, 2008, this court dismissed the Petition as time-barred. Id. Petitioner filed a notice of appeal and moved the Second Circuit for a certificate of appealability, which the Second Circuit denied. (See Mandate, No. 08-CV-2050 (NGG) (Dkt. 7).). Petitioner then moved in this court to vacate this court's Judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure, and on June 15, 2009, the court denied the motion. (Order, No. 08-CV-2050 (NGG) (Dkt. 9).)

### C.    Resentencing of Petitioner in State Court

On or about January, 27, 2012, the New York Department of Corrections and Community Supervision notified the Supreme Court, Queens County that pursuant to section 601-d of the New York Correction Law, Petitioner's sentence required a mandatory term of post-release supervision. (Brodt Aff. ¶ 8.) On March 16, 2012, the state court calendared the resentencing for April 4, 2012. (March 16, 2012, Order (Dkt. 14) at 1.) On April 12, 2012, the court resentenced Petitioner to include a five-year term of post-release supervision.[2] (See July 17, 2012, Order ("State Habeas Denial") (Dkt. 14) at 1.)

---

[2]  The record provided to this court does not appear to include the April 12, 2012, resentencing order; this court adopts April 12, 2012, as the resentencing date as referenced in the state court's denial of Petitioner's subsequent habeas petition.

4

**D.     State Habeas Petition**

    1.     Habeas Petition

On or about June 13, 2012, Petitioner filed a petition for a writ of habeas corpus in Supreme Court, Queens County. (June 13, 2012, Pet. for Habeas Corpus Pursuant to Article 70 of CPLR ("State Court Pet.") (Dkt. 14) at 1.) He claimed that the state court lost jurisdiction during the twelve-year gap between his original sentencing and his resentencing, and therefore his resentencing was illegal. (Id. at 2.) The State responded on July 13, 2012, making two points: First, the State argued that a habeas corpus petition was not an appropriate vehicle to raise issues that could be advanced on direct appeal, which Petitioner failed to do—even though it was available to him after the resentencing. (July 13, 2012, Answer ("State Court Answer") (Dkt. 14) at 1-2.) Second, the State argued that Petitioner's claim was meritless because the trial court properly resentenced him according to the Court of Appeals's opinion in People v. Williams, 925 N.E.2d 878 (N.Y. 2010). (Id. at 2-4.) On July 17, 2012, the New York Supreme Court denied the State Court Petition. (State Habeas Denial at 1.) In its decision, the court noted that the Court of Appeals had already concluded in Williams that a sentencing court may resentence a defendant to include a mandatory term of post-release supervision, so long as the defendant has not yet completed his sentence. (Id.)

On August 16, 2012, Petitioner attempted to file an appeal of the State Habeas Denial to the Appellate Division—but still he did not bring a direct appeal of the underlying resentencing. (Pet'r's Article 70 Habeas Corpus Appeal Pursuant to CPLR 7011 ("State Habeas Appeal") (Dkt. 14) at 1.) On November 14, 2012, the Appellate Division opened a file in the case. (Nov. 14, 2012, Ltr. from Appellate Division Clerk's Office (Dkt. 14) at 1.) On November 26, 2012, the Appellate Division Clerk's Office sent Petitioner a letter, informing him

that he needed to perfect his appeal in accordance with the court's rules. (Nov. 26, 2012, Ltr. from Appellate Division Clerk's Office (Dkt. 14) at 1.) The Clerk's Office notified Petitioner that he needed to file nine copies each of a record or appendix and a brief on the appeal, along with proof that the State had been served with two copies of the record or appendix and Petitioner's brief. (Id.) The Clerk's Office also informed Petitioner that he was required to pay a filing fee of $315, unless he was indigent, in which case he could apply for leave to proceed on the appeal as a poor person. (Id.)

### 2. Statement in Lieu of Record on Appeal

On March 14, 2013, Petitioner sent a notice of statement pursuant to section 5527 of the New York Civil Practice Law and Rules ("CPLR") and a statement in lieu of record on appeal in an attempt to perfect his appeal. (Mar. 14, 2013, Not. of Statement (Dkt. 14) at 1; Mar. 14, 2013, Statement in Lieu of R. on Appeal (Dkt. 14).) On May 15, 2013, the State opposed Petitioner's request. (See May 15, 2013, Aff. of Daniel Bresnahan (Dkt. 14).) On May 17, 2013, the trial court denied the request because the State did not consent to Petitioner commencing his appeal on a statement in lieu of record on appeal. (May 17, 2013, Decision & Order on Mot. (Dkt. 14) at 1.)

### 3. Request for Poor Person Status

Concurrently, on January 25, 2013, Petitioner applied to the Appellate Division to proceed as a poor person in order to avoid paying the filing fee for his appeal. (Pet'r's Jan. 25, 2013, Request for Poor Person Status ("Req. for Poor Person Status") (Dkt. 14) at 1.) The State responded on February 21, 2013, taking no position. (Aff. of Rona Kugler in Resp. to Def.'s Mot. for Poor Person Relief and Assignment of Counsel ("Kugler Aff.") (Dkt. 14) ¶ 4.)

The request for poor person status was denied on March 19, 2013. (Mar. 19, 2013, Decision & Order on Mot. ("Poor Person Status Denial") (Dkt. 14) at 1.)

4. Application for Reconsideration to Proceed as a Poor Person

On March 27, 2013, Petitioner moved to reargue the motion. (Pet'r's Appl. for Recons. to Proceed as a Poor Person on Appeal Pursuant to CPLR 1101 ("Appl. for Recons.") (Dkt. 14) ¶ 6.) On April 12, 2013, the State responded, again taking no position. (Aff. of William Branigan in Resp. to Def.'s Mot. to Reargue ("Branigan Aff.") (Dkt. 14) ¶ 7.) The court again denied the request. (Apr. 29, 2013, Decision & Order on Mot. ("Recons. Denial") (Dkt. 14) at 1.)

Petitioner sought leave to appeal the denial of poor person status to the Court of Appeals. (Brodt Aff. ¶ 34.) The court denied the request on September 10, 2013, because the order sought to be appealed from did not "finally determine the proceeding within the meaning of the Constitution."[3] (Sept. 10, 2013, Order (Dkt. 14) at 1.)

**E. Federal Habeas Petition**

On September 24, 2013, Petitioner filed a Petition for a Writ of Habeas Corpus in this court, contending that his Fourteenth Amendment rights to due process and equal protection of the law were violated when the Appellate Division denied his request for poor person status. (Pet. ¶ 5.) He contends that the Appellate Division's refusal to allow him to proceed as a poor person unlawfully restricted his ability to appeal the denial of his state court petition for a writ of heabeas corpus related to the resentencing. (Id. ¶¶ 5, 9-10.) On February 28, 2014, the Respondent submitted her response, largely construing the Petition as a claim for ineffective assistance of counsel in a state court collateral attack, but also addressing the legality of the

---

[3] The order did not specify whether the Court of Appeals was referring to the United States Constitution or the New York State Constitution. Cf. N.Y. C.P.L.R. 5601(b)(1).

resentencing. (Resp't's Mem. of Law ("Resp't's Opp'n") (Dkt. 13).) Petitioner filed a reply

(Pet'r's Resp. to Resp't's Opp'n ("Pet'r's Reply") (Dkt. 16)), and two letters in further support of

the Petition (Pet'r's Oct. 30, 2014, Ltr. (Dkt. 17); Pet'r's Mar. 16, 2015, Ltr. (Dkt. 18)).

## II. HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for

a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State

court only on the ground that he is in custody in violation of the Constitution or laws or treaties

of the United States." A person in custody pursuant to a judgment of a state court must generally

meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and

(3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a

judgment of a State court shall not be granted unless it appears that . . . the applicant has

exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The

exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the

state courts," meaning that the petitioner "informed the state court of both the factual and the

legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191

(2d Cir. 1982) (en banc).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order

for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011

WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278

(1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state

court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Dave, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, every claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA— whereby a district court may deny an entire habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other words, a court may deny but not grant "mixed petitions" on the merits. Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

### B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556

U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id.

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (quoting Lee v. Kemma, 534 U.S. 362, 375 (2002)). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [] resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings"). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can no longer be brought in state court, the court may consider the petitioner's remaining claims on the merits so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23.

## C.  AEDPA Standard

Where a state court does reach the merits of a claim asserted in a § 2254 petition, the

state court's merits decision is reviewed under the deferential standard set forth in AEDPA,

which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the

Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v.

Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d

Cir. 2002)). A state court decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state

court decision is an "unreasonable application" of clearly established federal law "if the state

court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The question

is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but

whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation

marks, alterations, and emphases omitted). The petition may be granted only if "there is no

11

possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.  DISCUSSION

Petitioner challenges his state court resentencing and the Appellate Division's denial of his request for poor person status for the purpose of appealing the denial of his state habeas petition.[4]

### A.  Request for Poor Person Status

The Appellate Division denied Petitioner's request for poor person status on March 19, 2013, and then denied his application for reconsideration on April 29, 2013. (Poor Person Status Denial at 1; Recons. Denial at 1.) In the first denial, the Appellate Division stated that the motion was denied "upon the papers filed in support of the motion and the papers filed in relation thereto," and Petitioner's time to perfect his appeal was enlarged by one month. (Poor Person Status Denial at 1.) The court issued a materially identical ruling on the reconsideration motion, but further stated that Petitioner's time to perfect his appeal would not be extended

---

[4] Respondent dedicates much of her brief to arguing that Petitioner cannot assert a claim here for ineffective assistance of counsel in a post-conviction collateral attack in state court. (See generally Resp't's Opp'n.) See also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). But Petitioner expressly disavows this theory. (See Pet'r's Reply at 1 ("Petitioner is not appealing that he was denied the right to counselor [sic] on appeal but that he was denied the right to appeal because of his poverty and inability to pay for the court filing fees, denying him due process and equal protection of the law under the Fourteenth Amendment of the united states constitutional [sic].").) Accordingly, the court does not address this purported ground for relief.

beyond June 20, 2013. (Recons. Denial at 1.) The State did not take a position on either motion. (Kugler Aff. ¶ 4; Branigan Aff. ¶ 7.)

1.    Exhaustion

Petitioner's Fourteenth Amendment claim in connection with the denial of his request for poor person status is (1) exhausted and (2) not procedurally barred. In Petitioner's application for reconsideration to the Appellate Division, Petitioner submitted an affidavit detailing his alleged indigence. (Appl. for Recons. ¶¶ 2-4.) In that affidavit, Petitioner also stated that his Fourteenth Amendment rights were violated, along with a brief argument. (Id. ¶ 5.) Petitioner's Fourteenth Amendment claim is exhausted because that document sufficiently alerted the Appellate Division of both the factual and legal premises of his current claim.

2.    Procedural Bar

Petitioner's Fourteenth Amendment claim is not procedurally barred. First, the State did not invoke any procedural bar and did not oppose Petitioner's request for Poor Person Status. (See Resp't's Opp'n at 16.) Second, the Appellate Division denied Petitioner's request on the merits (as explained below), not on a procedural ground.

3.    Review under the AEDPA Standard

*a.    The AEDPA Standard Applies*

The court construes the Appellate Division's somewhat ambiguous orders to be based on the merits. The Appellate Division did not overtly address whether its decision to deny Petitioner poor person status was based on the merits, but nothing in the court's orders imply they were based on any procedural grounds. (Recons. Denial at 1.) Nor was the court required to do so for the decision to have been "on the merits." The fact that the court denied the motion, based on the submitted papers—without any mention of a procedural error—suggests the

13

decision was reached on the merits. Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). As the Appellate Division's order was rendered on the merits, this court will analyze Petitioner's claim under the deferential standard set out in AEDPA.

b.    *Review of the Merits under AEDPA*

The Appellate Division's decision was neither contrary to, nor involved the unreasonable application of, clearly established Supreme Court precedent. Petitioner claims that denying him poor person status for the purposes of a civil appeal is a violation of the Fourteenth Amendment's Equal Protection and Due Process Clauses. (Pet. ¶¶ 5, 9-10.) Petitioner notes that if a state authorizes appellate review of trial court decisions in criminal cases, it must provide an appellate system that allows an indigent person to obtain review of his case. Griffin v. Illinois, 351 U.S. 12, 18-19 (1956). But Petitioner is not arguing here that the New York State appellate system is unconstitutional because it denies indigent people the right to an appeal in criminal cases. Instead, he is claiming that the Appellate Division's specific decision to deny him poor person status for purposes of the civil appeal of his post-resentencing state habeas proceeding was unlawful. (Pet. ¶¶ 5, 9-11.) For that decision to qualify as contrary to, or an unreasonable application of, Supreme Court precedent, there must be some clearly established precedent from the Supreme Court stating either that (1) courts must grant poor person status to everyone that applies for it in civil appeals, or at least in all appeals of denials of habeas corpus, or (2) someone in Petitioner's position is entitled to appellate review without paying the filing fee.

This court has not found any Supreme Court decisions supporting either of those propositions. In the decade that followed Griffin, the Supreme Court did expand its holding in

14

several respects. See, e.g., Eskridge v. Wash. State Bd. of Prison Terms & Parole, 357 U.S. 214 (1958) (per curiam) (holding as unconstitutional state law that allowed trial judge to determine whether there was reversible error before providing trial transcript to indigent defendant for direct appeal); Burns v. Ohio, 360 U.S. 252, 257 (1959) ("[O]nce the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure." (internal citation omitted)); Smith v. Bennett, 365 U.S. 708, 709 (1961) (holding that Griffin and Burns principles extend to filing fees related to post-conviction habeas proceedings in state trial court); Draper v. Washington, 372 U.S. 487, 497-98 (1963) ("By allowing the trial court to prevent petitioners from having stenographic support or its equivalent for presentation of each of their separate contentions to the appellate tribunal, the State of Washington has denied them the rights assured them by this Court's decisions in Griffin and Eskridge."); Lane v. Brown, 372 U.S. 477, 478 (1963) (declaring as unconstitutional state law that exclusively authorized the state public defender—and not a defendant appearing pro se—to request a transcript on appeal of a denial of a writ of error coram nobis). But see Coppedge v. United States, 369 U.S. 438, 441 (1961) (remanding for determination of whether defendant-appellant could proceed in forma pauperis, but upholding statute that allows federal district courts and circuit courts to make a finding of whether an appeal is brought in "good faith" before allowing in forma pauperis status); 28 U.S.C. § 1915(a)(3). But nothing in the Supreme Court's jurisprudence post-Griffin requires a state to provide its prisoners with unqualified, no-fee access to an appellate court for a review of a trial court's decision to deny a post-conviction collateral attack. In other words, a prisoner's

indigence, on its own, does not mean he has a constitutional right to access an appellate court in this situation without paying a filing fee.

Here, the Appellate Division denied Petitioner's request for poor person status under section 1101(a) of the CPLR, which requires the moving party to:

> file an affidavit setting forth the amount and sources of his or her income and listing his or her property with its value; that he or she is unable to pay the costs, fees and expenses necessary to prosecute or defend the action or to maintain or respond to the appeal; the nature of the action; sufficient facts so that the merit of the contentions can be ascertained; and whether any other person is beneficially interested in any recovery sought and, if so, whether every such person is unable to pay such costs, fees and expenses.

N.Y. C.P.L.R. 1101(a). Upon this filing, the court may grant permission to proceed as a poor person, but the statute does not require the court to do so. Id.

Petitioner first submitted a letter to the Appellate Division stating that he is "indigent and unable to pay the cost of [his] appeal." (Req. for Poor Person Status at 1.) After his request was denied, Petitioner submitted a more thorough affidavit stating that he is indigent; has no income other than correctional facility wages; owns no property; has no savings, assets or income; and there is no other person who can pay for his appeal. (Poor Person Status Denial at 1; Appl. for Recons. ¶ 4.) The court again denied the request. (Recons. Denial at 1.)

Based on the language of the statute, even if Petitioner is, in fact, indigent, the state court was permitted to deny the request to proceed as a poor person because his underlying claim was meritless, as discussed below. See N.Y. C.P.L.R. 1101(a) (requiring moving party to, inter alia, set forth "the nature of the action" and "sufficient facts so that the merit of the contentions can be ascertained" (emphasis added)). This court cannot identify any Supreme Court precedent which prohibits a state appellate court from considering the potential merits of a habeas action in determining whether to grant poor person status for the purposes of an appeal. Here, there is no

allegation that Petitioner was denied the right to file for a writ of habeas corpus in the trial court, and there is no allegation that Petitioner was denied the right to file a direct appeal related to his resentencing. Accordingly, the Appellate Division's denial of Petitioner's request for poor person status was not "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

**B. Constitutionality of the Resentencing**

In his Petition and briefs in support thereof, Petitioner primarily asks tis court to review the Appellate Division's order denying him poor person status (see Pet. ¶¶ 5, 9-10), but Petitioner also questions the legality of the underlying resentencing. And pursuant to section 1101 of the CPLR, the Appellate Division likely incorporated a review of the merits of Petitioner's claim into its decision to deny him poor person status. Like the Appellate Division, this court holds that Petitioner's federal claims related to his resentencing lack merit.

      1.    Exhaustion

Petitioner claimed in his state habeas petition that his resentencing violated state law. (See State Court Pet. at 1-3.) However, Petitioner arguably also stated a constitutional claim when he alleged in his state court petition that his claim "affects the fundamental fairness of the process." (Id. at 3.) Petitioner also referenced "a violation of due process" in his brief to the Appellate Division. (State Habeas Appeal at 4.) Although far from detailed, these phrases likely alerted the state courts as to the federal nature of Petitioner's claim, thus exhausting his claim in state court.

2.    Procedural Bar

The State noted in its brief in response to the state court petition that Petitioner made a procedural error by failing to file a direct appeal of his resentencing. (State Court Answer at 1-2.) However, the state court's order denying Petitioner's habeas petition was based entirely on the merits, with no reference to a procedural error. (State Habeas Denial at 1.) As the state court's order denying Petitioner's habeas petition was based on the merits of Petitioner's claim, the underlying habeas petition in state court is (1) not procedurally barred from review in this court, and (2) entitled to the deferential standard of review as outlined in AEDPA.

3.    Merits

The court has construed Petitioner's references to the "fundamental fairness of the process" and "due process" as raising claims under the Fifth and Fourteenth Amendments of the United States Constitution. In this respect, the resentencing of Petitioner was neither "contrary to," nor "involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[5] 28 U.S.C. § 2254(d).

a.    *Double Jeopardy*

The court construes the Petition liberally to contend that his resentencing violated the Fifth Amendment's Double Jeopardy Clause, which provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

---

[5] As explained in the State Habeas Denial, the resentencing was also lawful under New York law, despite Petitioner's original sentence failing to include a mandatory term of post-release supervision. In 2012, the Department of Corrections noticed the mistake, and promptly notified the sentencing court. (Brodt Aff. ¶ 8.) Petitioner claims that the trial court lost jurisdiction during the twelve-year gap between his original sentencing and the resentencing. (See State Court Pet. at 2.) See also N.Y. Crim. Proc. Law § 380.30(1) ("Sentence must be pronounced without unreasonable delay."). However, the New York Court of Appeals expressly rejected this argument in People v. Williams, where it held that a sentencing court may resentence a defendant to post-release supervision as long as the defendant has not completed his sentence. 925 N.E.2d 878 (N.Y. 2010). The state habeas court applied Williams, and held that the resentencing was proper under state law because Petitioner had not yet completed his sentence at the time of the resentencing, and the original sentence was illegal because it lacked the mandatory term of post-release supervision. (State Habeas Denial at 1.)

Under the AEDPA standard, Petitioner must show that the state court's decision was either contrary to, or involved the unreasonable application of, Supreme Court precedent regarding the Double Jeopardy Clause.

The Double Jeopardy Clause prohibits the alteration of a sentence that carries a legitimate expectation of finality. See United States v. Kyles, 601 F.3d 78, 83-84 (2d Cir. 2010). A defendant does not have a legitimate expectation of finality in an illegal sentence. See Williams v. Travis, 143 F.3d 98, 99 (2d Cir. 1998) (per curiam) (citing Pennsylvania v. Goldhammer, 474 U.S. 28, 30-31 (1985) (per curiam); United States v. DiFrancesco, 449 U.S. 117, 139 (1980); Bozza v. United States, 330 U.S. 160, 166-67 (1947)). In addition, under the Double Jeopardy Clause, "a defendant may not receive a greater sentence than the legislature has authorized." DiFrancesco, 449 U.S. at 139.

In this case, all parties agree, and Petitioner explicitly posits, that Petitioner's original sentence was illegal because it failed to contain a mandatory term of post-release supervision. See generally People v. Sparber, 889 N.E.2d 459 (N.Y. 2008) (explaining that sentence lacking mandatory post-release supervision is an illegal sentence under New York law), superseded by statute, N.Y. Penal Law § 70.85, N.Y. Correct. Law § 601-d; see also People v. Williams, 925 N.E.2d 878, 886 (N.Y. 2010) ("Our precedent has long recognized that courts have the inherent authority to correct illegal sentences. . . . Because [post-release supervision] is a mandatory component of a sentence for a crime punishable by a determinate prison term, there is no dispute that defendants' original sentences that omitted the imposition of terms of [post-release supervision] were illegal." (internal citation omitted)). Therefore, Petitioner did not have a legitimate expectation of finality in his sentence. Indeed, in Williams, the New York Court of Appeals rejected a double jeopardy challenge akin to the one made by Petitioner here, holding

19

that no reasonable expectation of finality arises until the completion of the imposed sentence.

Williams, 925 N.E.2d at 888; see also, e.g., United States v. Rourke, 984 F.2d 1063, 1066 (10th Cir. 1992) (finding no violation of Double Jeopardy Clause where defendant was resentenced because initial sentence was illegal due to lacking mandatory special parole term). The court's analysis is in accord with several decisions made by district courts in the Second Circuit. See, e.g., Harnett v. Conway, No. 08-CV-1061 (JPO), 2014 WL 6390285, at *9-11 (S.D.N.Y. Nov. 17, 2014) (rejecting double jeopardy challenge to state court resentencing that added mandatory term of post-release supervision); Prendergast v. Rivera, No. 06-CV-5314 (BMC), 2011 WL 4899945, at *8-10 (E.D.N.Y. Oct. 13, 2011) (holding that decision by New York Court of Appeals in Williams was neither contrary to, nor an unreasonable application of, Supreme Court precedent).

It is also clear that the new sentence does not go beyond state legislation, but in fact only adds a mandatory term of post-release supervision. See DiFrancesco, 449 U.S. at 139 ("[A] defendant may not receive a greater sentence than the legislature has authorized."). Petitioner's underlying conviction required a term of post-release supervision; therefore, the new sentence, which includes the term of post-release supervision, does not go beyond state legislation. (See State Habeas Denial at 1.)

For these two reasons, the resentencing of Petitioner was neither contrary to, nor an unreasonable application of, Supreme Court precedent regarding the Fifth Amendment's Double Jeopardy Clause.

*b.*    *Due Process*

Petitioner does not identify, nor can the court find, any Supreme Court precedent that establishes that resentencing an incarcerated prisoner to add a term of mandatory, post-release supervision violates that prisoner's right to due process.

Again, the court agrees with other district courts in this Circuit that have confronted similar challenges by state prisoners to the imposition, upon resentencing, of a mandatory term of post-release supervision. See Harnett, 2014 WL 6390285, at *12; Prendergast, 2011 WL 4899945, at *10. First, nothing in the record indicates that Petitioner's term of post-release supervision was added out of "vindictiveness" by the trial court—rather, pursuant to section 601-d of the New York Correction Law, the Department of Corrections notified the trial court that the sentence lacked the mandatory term; the trial court assigned counsel, held a hearing, and ultimately added the term of post-release supervision. See Harnett, 2014 WL 6390285, at *12; see generally Somerville v. Hunt, 695 F.3d 218, 222-23 (2d Cir. 2012) (explaining that under Supreme Court precedent, "[w]here there is no [] reasonable likelihood [of vindictiveness], the burden remains upon the defendant to prove actual vindictiveness" by the trial court in resentencing the defendant (quoting Alabama v. Smith, 490 U.S. 794, 800 (1989)). Second, nothing in the record indicates that the addition of a five-year term of post-release supervision "shocks the conscience," where the defendant otherwise remains in custody under a term of imprisonment. See Prendergast, 2011 WL 4899945, at *10; see generally People v. Lingle, 949 N.E.2d 952, 957-58 (N.Y. 2011) (collecting cases and rejecting due process challenge to resentencing because, under Supreme Court precedent, the action did not shock the conscience, but merely "imposed statutorily-required sentences").

21

## IV.  CONCLUSION

For the foregoing reasons, the Petition is DENIED.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this judgment would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      July 22, 2015

NICHOLAS G. GARAUFIS
United States District Judge